**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

IN RE:   AARON T. LORENZ,[1]                    Case No. 06-71881-A
                                                Chapter 13
         **Debtor.**

_____

**MEMORANDUM OPINION AND ORDER SUSTAINING FIRST CITIZEN BANK'S
OBJECTION TO CONFIRMATION**
_____

This matter is before the Court on First Citizens Bank's ("FCB") Objection to Confirmation of the debtor's Chapter 13 Plan; specifically, FCB objects to the bifurcation of its claim and alleges that it should be paid as fully secured following the addition of the "hanging paragraph"[2] to § 1325 in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  The Court must determine whether the debtor may split or bifurcate FCB's secured claim against the debtor's vehicle into a secured and unsecured debt either because the "hanging paragraph" simply does not modify the right to bifurcate or because the "hanging paragraph" is inapplicable in this case.  This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] Both briefs submitted to the Court in this case erroneously name the debtor as Anthony Todd Lorenz.
[2] The "hanging paragraph" is so termed because it is a free-standing unnumbered paragraph inserted between 11 U.S.C. 1325(a)(9) and 1325(b)(1).

## FINDINGS OF FACT

The facts in this case are not in dispute. On June 10, 2004, in conjunction with the purchase of a 2004 Chevrolet 2500 truck ("Vehicle"), the debtor signed a Retail Installment Sales Contract with Kline Chevrolet. Kline Chevrolet later assigned the sales contract to FCB, which continues to hold it. On December 7, 2006, the debtor filed for relief under Chapter 13 of the Bankruptcy Code ("Code") and on January 2, 2007, filed his Chapter 13 Plan ("Plan") in accordance with § 1321 and Fed. R. of Bankr. Pro. 3015(b).[3]

On January 19, 2007, FCB filed a secured claim in the amount of $26,623.30 with 7.35% interest and listed the value of the collateral as $19,050.00. However, the Plan does not propose to pay the entire claim as secured; instead, it proposes to bifurcate the claim, paying $17,200.00 with 9.5% interest as secured, and the balance, $9,423.30, as unsecured with no interest. On February 5, 2007, FCB filed the instant objection and the parties agreed at the hearing on the objection to brief the issue for the Court and forego any further hearing or argument on the briefs; therefore, no testimony was taken on the issues herein, but the debtor did file an affidavit as an attachment to his supplemental brief, explaining the purchase of the Vehicle.

The debtor admitted in the affidavit that he purchased the Vehicle for personal, household, family and business use. Specifically, he stated the following non-exhaustive list of reasons for the purchase:[4]

---

[3] Fed. R. Bankr. Pro. 3015(b) calls for the plan to be filed within 15 days of the filing of the bankruptcy petition, but the debtor moved for and was granted an extension of time in which to file his plan. The plan was therefore timely filed.
[4] While the affidavit stated that this list is non-exhaustive, no other reasons were offered to the Court.

2

> A. At the time of the purchase I was married and living with my wife and two children and purchased the truck, *in part*, for personal use, household use, AND family use, including but not limited to:
>    a. To drive my oldest child to and from school and school related activities;
>    b. To drive my youngest child to and from daycare, and daycare related activities;
>    c. To do family tasks, including, but not limited to:
>        i. shopping for groceries for the family,
>        ii. shopping for clothing and supplies for my children,
>        iii. Family recreation, activities and outings, and
>        iv. To take family trips and vacations;
>    d. To drive my children to and from doctor and dentist appointments;
>    e. To drive my children to and from Church and Church related activities;
>    f. To drive my children to and from recreation activities, including, but not limited to, Gymnastics and Girl Scouts;
>    g. To drive to and from school conferences, PTA meetings and other school or daycare related activities regarding my children.
>
> B. I am a self employed (S Corp) professional interior and exterior painter and I purchased the truck in large part for work use and purposes, including, but not limited to:
>    a. To travel to and from work or job sites;
>    b. To carry ladders, such that when I traded my previous truck in for the current truck, I took the ladder rack off the trade-in and put it on the truck herein, with the full knowledge of the dealership, who was the original lender;
>    c. To carry paint to and from the supplier;
>    d. To carry paint to and from the work sites; and
>    e. To carry equipment, such as spray rig and pressure washer, to and from work sites.

Lorenz Aff. ¶¶ 1.A. – 1.B.  Further the debtor stated that he specifically purchased the

truck to accommodate both his family and his business needs. *Id.* at ¶¶ 2. & 3.

Further there is no dispute that FCB has a purchase money security interest in the Vehicle or that the debtor acquired the Vehicle within the 910 days preceding the date of the filing of the petition.

## ARGUMENTS

FCB argues that the "hanging paragraph" specifically exempts its claim from bifurcation. FCB states that it has a purchase money security interest ("PMSI") in the Vehicle that was purchased less than 910 days prior to the filing of the bankruptcy and that the debtor uses the Vehicle for personal use, thereby meeting the requirements of the "hanging paragraph" to exempt the claim from the bifurcating valuation allowed by 11 U.S.C. § 506. FCB argues that the "hanging paragraph" does not require that the debtor use the Vehicle for personal use *only*, as such intent would have been indicated by the inclusion by Congress of words such as "sole" or "exclusive" before the term "personal use;" rather, that any *significant and material* personal use of the Vehicle by the debtor meets the requirements of the "hanging paragraph" regardless of any other uses of the Vehicle. This "significant and material" personal use test is one developed by the court in *In re Solis*, 356 B.R. 398, 409 (Bankr. S.D. Tex. 2006) and promulgated by FCB as the most logical and reasonable interpretation of the term "personal use;" FCB urges this Court to adopt it for the same reasons given by the court in *Solis*. Moreover, FCB relies on the fact that in a previous ruling by this Court, *In re Phillips*, No. 06-71604, 2007 Bankr. Lexis 791 (Bankr. E.D. Va. 2007), we specifically declined to read the words "sole" or "exclusive" into the "hanging paragraph" before the term

4

"personal use" and while that case did not involve business use of a vehicle by the debtor, it is still applicable here.

The debtor argues that he may bifurcate FCB's claim under either of two theories. First, the debtor argues that the words "sole" or "exclusive" should be read into the "hanging paragraph" before the term "personal use" and, secondly, that the "hanging paragraph" does not forbid the bifurcation of claims even in situations where 11 U.S.C. § 506 does not apply.

The debtor's first argument is one of Code interpretation; specifically, that the statute's plain language should be interpreted strictly unless doing so would lead to an absurd result. He argues that Congress intentionally drafted the provisions of BAPCPA, and that when Congress uses certain words in one section but not in another, they are presumed to do so deliberately. He states that the omission of the words "primarily for," "family" or "household" before the term "personal use" in the "hanging paragraph" is significant because those words were added to § 506 and are used throughout the Code in sections such as 11 U.S.C. §§ 101(8), 365 (d)(5), 507(a)(7), 522, and 722. He argues that Congress could have added these words to the "hanging paragraph," but chose not to, and that effect should be given to the drafters' intentional omission. Therefore, the only plausible reading, he argues, is "sole" or "exclusive" personal use of the vehicle by the debtor and that such a reading does not produce an absurd result. The debtor goes on to argue that the debtor's family, household, and most especially his business uses of the Vehicle remove it from property contemplated by the hanging paragraph. Therefore, the claim may be bifurcated.

5

Alternatively, the debtor argues that even if the "hanging paragraph" does apply to the Vehicle, the claim may still be bifurcated pursuant to 11 U.S.C. § 1322(b)(2)[5] in concert with 11 U.S.C. § 1325(a)(5)(B)(ii),[6] as such treatment is not specifically prohibited by the "hanging paragraph." The debtor argues that the plain language of the "hanging paragraph" merely excludes the application of § 506 to select claims; it does not require the full repayment of the underlying debt. The debtor states that it is § 1325(a)(5)(B)(ii) and not § 506 that allows modification or bifurcation of claims, so whether § 506 applies has no bearing on the debtor's ability to modify or bifurcate claims. The debtor argues that any finding to the contrary renders the interplay of § 1322(b)(2) with §§ 1325(a)(5)(B)(i)[7] and (ii) meaningless, which is an absurd result.

The debtor argues that the addition of the "hanging paragraph" is, in essence, simply a change in the way claims are valued. He argues that present value can be

---

[5] Section 1322(b)(2) of the Code reads

> [s]ubject to subsections (a) and (c) of this section, the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2).

[6] Section 1325(a)(5)(B)(ii) reads

> [e]xcept as provided in subsection (b), the court shall confirm a plan if with respect to each allowed secured claim provided for by the plan the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

*Id.* at § 1325(a)(5)(B)(ii).

[7] Section 1325(a)(5)(B)(i) reads

> [e]xcept as provided in subsection (b), the plan provides that the holder of such claim retain the lien securing such claim until the earlier of the payment of the underlying debt determined under nonbankruptcy law; or discharge under section 1328.

6

determined in one of two ways, either through a "formula approach" as illustrated in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), or through the application of non-bankruptcy law (*e.g.* foreclosure or repossession) to determine present value.

## CONCLUSIONS OF LAW

I. "The Hanging Paragraph"

Congress made significant changes to the bankruptcy laws with the passage of BAPCPA; one such change regards the treatment of claim secured by personal property in Chapter 13 plans. As this Court has previously discussed in *In re Phillips*, No. 06-71604, 2007 Bankr. Lexis 791, *27-*28 (Bankr. E.D. Va. Mar. 8, 2007), prior to BAPCPA, debtors were able to bifurcate allowed secured claims pursuant to § 506 of the Code, treating the amount up to the replacement value of the collateral as secured and any remaining balance as unsecured, a process known in practice as "cram down." *Id.* (citing *In re Johnson*, 337 B.R. 269, 270 (Bankr. M.D.N.C. 2006)). In an effort to protect creditors from "cram down" [8] Congress amended § 1325 of the Code with an unnumbered paragraph which states:

---

*Id.* at § 1325(a)(5)(B)(i).

[8] The one paragraph legislative history for this amendment is titled "Protection for Secured Creditors" and reads:

> S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S.256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing. In addition, the bill terminates the automatic stay with respect to personal property if the debtor does not timely reaffirm the underlying obligation or redeem the property. Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a

7

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325 (2006).  This is what has been affectionately termed the "hanging paragraph."  Section 506 of the Code, in pertinent part, reads:

> (a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title [11 USCS § 553], is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
>    (2) If the debtor is an individual in a case under chapter 7 or 13 [11 USCS §§ 701 et seq. or 1301 et seq.], such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.

11 U.S.C § 506(a)(1) & (2).

---

> purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition. Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. Rep. No. 109-31(1), Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 109th Cong. (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 103.

From a simple reading of the "hanging paragraph" it appears that Congress is attempting to provide special treatment to creditors who loan money to debtors within the 910 days preceding the debtor's bankruptcy filing so that the debtors can purchase a vehicle for personal use. *In re Phillips*, 2007 Bankr. Lexis at *27-*28, *see also In re Wilson*, No. 06-40637, 2006 Bankr. Lexis 3325, *6 (Bankr. D. Kan., Dec. 5, 2006). However, application of the statute has not proven quite so simple. Numerous questions have arisen as courts across the country have attempted to apply the less than artfully drafted "hanging paragraph." See *In re Trejos*, 352 B.R. 249, 254 (Bankr. D. Nev. 2006) for an extensive list of cases interpreting the statute.

This Court previously discussed the rules of statutory interpretation in the Fourth Circuit in *In re Phillips*. First, all statutory interpretation should begin and "'end with the statute's plain language.'" *In re Phillips*, 2007 Bankr. Lexis at *31 (citing *Hillman v. Internal Revenue Serv.*, 263 F.3d 338, 342 (4th Cir. 2001). We noted two exceptions to this Plain Meaning Rule: 1) if a party can demonstrate that its application "'produce[s] a result [] at odds with the intentions of its drafters,'" *In re Phillips*, 2007 Bankr. Lexis at *31 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242(1989)), and 2) if its application "' results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.'" *In re Phillips*, 2007 Bankr. Lexis at *31 (citing *RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra)*, 361 F.3d 257, 265 (4th Cir. 2004)). We now apply these rules of statutory construction to the issues at hand.

9

II.  The Hanging Paragraph and §§ 1322 and 1325; Valuation

We will address the debtor's second argument first as we have previously addressed this exact issue.

Debtor's counsel in the instant case also represented the debtor in *In re Phillips* previously decided by this Court.  The debtor here makes precisely the same argument regarding the hanging paragraph and § 1322 that Phillips made, specifically that the hanging paragraph does not prohibit bifurcation because it does not modify §§ 1322 or 1325.  For the same reasons delineated in *Phillips* we again find no merit in this claim. Judge St. John explained it best:

> Some commentators on the "hanging paragraph" have suggested the absence of a direct amendment of Section 506 of the Bankruptcy Code is significant. *See* Jean Braucher, *Rash and Ride-Through Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act,* 13 AM. BANKR. INST. L. REV. 457, 471-72 (2005) ("Perhaps the intent was to require full payment of these debts, even when dramatically undersecured because of the depreciation that occurs right after purchase, when the goods become used, but perhaps not. A large problem with the argument that the intention was to dictate full debt repayment for certain recently acquired collateral is that section 1325(a) nowhere says that."). This argument was adopted by a minority of reviewing courts. *See, e.g., In re Carver,* 338 B.R. 521, 524-25 (Bankr. S.D. Ga. 2006). As this Court recently concluded in *In re Ellegood,*    B.R.   , Case No. 06-50579-SCS, 2007 Bankr. LEXIS 578, 2007 WL 576048, at *3 (Bankr. E.D. Va. Feb. 22, 2007), "'[t]he majority holds that a claim of the type described in the hanging paragraph . . . is deemed secured in the full amount of the claim. Courts reaching this conclusion reason that nonbankruptcy law determines whether a claim is secured while bankruptcy law determines the value of a secured claim.'" 2007 Bankr. LEXIS 578, [WL] at *3 (quoting *In re Green,* 348 B.R. 601, 603 (Bankr. M.D. Ga. 2006)). Judge Markell has well-summarized this conclusion:
>
>> [I]t is evident that Section 506 cannot be read as the exclusive repository of secured status in chapter 13; as noted in *Dewsnup,* Section 506(a) is "not a definitional provision." This result conforms to the structure and workings of chapter 13 and of the Bankruptcy Code itself. If the

10

> contractual part of a claim is modified and then satisfied, as compliance with Section 1325(a)(5)(B) assures, then the lien is extinguished; in short, no debt, no lien. Debtors should desire this result, since the goal of a chapter 13 plan is to deal with their debts permanently, and not just during the pendency of the case. And reading the hanging paragraph to simply take away the bifurcation that is unique to bankruptcy, and leave creditors with liens on estate property to still be "secured claims," simply affects the amount that is to be paid to secured creditors.
>
> The consequence of this analysis is that there may be allowed "secured claims" in chapter 13 without resort to Section 506. As a result, in cases in which the hanging paragraph applies, and the creditor holds an allowed claim secured by a lien, the claim qualifies as an "allowed secured claim provided for by the plan" as anticipated by Section 1325(a)(5).

*In re Trejos,* 352 B.R. 249, 263-64 (Bankr. D. Nev. 2006) (citing *Dewsnup v. Timm,* 502 U.S. 410, 415, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992); *In re Brooks,* 344 B.R. 417, 420-21 (Bankr. E.D.N.C. 2006); David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code,* 14 AM. BANKR. INST. L. REV. 301 (2006) ("*Dewsnup* permits unmooring the definition of 'allowed secured claim' from § 506(a)(1).")).

The lack of reference by the "hanging paragraph" to Section 1322 of the Bankruptcy Code similarly does not limit the effect of this section. The interpretation of the "hanging paragraph" urged by the Trustee and Triad[9]"does not make the language of Section 1322(b)(2) meaningless; a plan may still modify the term of the loan and the interest rate, even if bifurcation is not allowed." *In re Johnson,* 337 B.R. 269, 273 (Bankr. M.D.N.C. 2006). *See also In re Trejos,* 352 B.R. at 263 n.25 ("The hanging paragraph does not alter Section 1322(b)(2) which allows debtors to modify the claim secured by estate property--debtors may still stretch out maturity dates, alter payment schedules and propose modified interest rates.").

This Court cannot conclude that either of the enumerated exceptions to the Plain Meaning Rule apply with regard to this result, as it neither leads to a conflict between or among neighboring or related statutes, nor produces an absurd result. Instead, the result appears consistent with the statutory scheme of the Bankruptcy Code to ensure that claims that are subject to the "hanging paragraph" will be paid as secured claims, in the full amount of the claim. *See In re Ellegood,* 2007 Bankr. LEXIS 578, 2007 WL 576048, at *3. Accordingly, Phillips' argument that the "hanging paragraph," by its failure to modify Sections 1322 and 1325 of the Bankruptcy Code, thereby permits the "bifurcation"

---

[9]The Trustee and the creditor, Triad, made essentially the same arguments in *In re Phillips* that the creditor, FCB, is making in the instant case. *In re Phillips,* 2007 Bankr. Lexis at *6-*11.

11

> attempted here is without merit. Likewise, Phillips' argument that collateral subject to the "hanging paragraph" should be valued using one of the methods she suggest must also be rejected for these same reasons.[10]

*In re Phillips*, 2007 Bankr. Lexis at *35-*39. Simply put, §§ 1332(b)(2) and 1325 can be given full effect without any reference to § 506. We reiterate our reasoning in *In re Phillips*, and find again that this argument fails. Now we turn our attention to the debtor's use of the Vehicle.

III. Acquired for the personal use

The crux of the issue here is whether the debtor's business use of the vehicle, even in the face of his personal use of it, is enough to remove it from the purview of the "hanging paragraph" and allow the debtor to cram down the value of the Vehicle. The debtor argues, just as the debtor in *In re Phillips* did, that personal use of the vehicle should be read as the "sole" or "exclusive" personal use, such that any other use would make the "hanging paragraph" inapplicable and allow bifurcation of FCB's claim.

It is uniformly accepted that it is the debtor's intended use at the time the vehicle was purchased that should be examined to determine whether the "hanging paragraph" applies to a particular claim, *Id.* at *50, *In re Solis*, 356 B.R. at 408-09, and that actual use is evidence of intended use. *In re Solis*, 326 B.R. at 408-09, *In re Wilson*, 2006 Bankr. Lexis at *12.

---

[10] It is important to note that the debtor in *In re Phillips* offered the same valuation techniques as the debtor in the instant case, either the "formula approach," wherein the Court starts with a low figure (such as the liquidation value) and requires the creditor to present evidence to show that a higher value should be used, or non-bankruptcy law (such as foreclosure or repossession). *In re Phillips*, 2007 Bankr. Lexis at *21.

12

The term "personal use" is not defined in the Code, *In re Phillips*, 2007 Bankr. Lexis at *39 (citing *Johnson*, 350 B.R. at 714-15), however, the definition of "personal use" is not a new issue. In fact, it is one of the most litigated issues to date regarding the "hanging paragraph." *See, e.g., In re Joseph*, No. 06-50655, 2007 Bankr. Lexis 1049 (Bankr. W.D. La., Mar. 20, 2007), *Wilson*, 2006 Bankr. Lexis 3325, *In re Solis*, 356 B.R. 398 (Bankr. S.D. Tex. 2006), *In re Hill*, 352 B.R. 69 (Bankr. W.D. La. 2006), *In re Johnson*, 350 B.R. 712 (Bankr. W.D. La. 2006), *In re White*, 352 B.R. 633 (Bankr. E.D. La. 2006).

Vehicles are rarely bought for one use and courts have employed various tests to determine whether other uses in addition to personal render the "hanging paragraph" inapplicable. In *In re Phillips*, we identified two different approaches used by courts to make this determination: 1) totality of the circumstances and 2) personal use that is "significant and material." *In re Phillips*, 2007 Bankr. Lexis at *53-*54.

The totality of the circumstances cases referenced in *In re Phillips* focused most heavily on whether the acquisition of the vehicle allowed the debtors to make significant contributions to the gross income of the family. *In re Hill*, 352 B.R. at 73, *In re Johnson*, 350 B.R. at 716. Since the time of issuance of the *In re Phillips* opinion, another case employing the totality of the circumstances approach has been reported, but that case focused on which use, personal or business, predominated. *In re Joseph*, 2007 Bankr. Lexis at *12-*13.

However, we continue to find the "significant and material" rationale used by the *Solis* court more persuasive. With all due respect, it seems to us that the *Hill*, *Johnson*,

13

and *Joseph* courts attempted to define "personal use" by determining what it was not, which does not track the Plain Meaning Rule as closely as attempting to define what personal use is. Using the "significant and material" test that this Court adopted in *In re Phillips* is a more straightforward approach to defining personal use and, we believe, the one most in keeping with the intent of the drafters. Therefore, for the reasons stated in *Phillips*, we reaffirm our decision to refuse to read a modifier such as "sole" or "exclusive" into the "hanging paragraph" before the term "personal use". *In re Phillips*, 2007 Bankr. Lexis at *60-*61.

As for the family and household use of the Vehicle, this Court previously noted that the Fourth Circuit Court of Appeals has determined that in the context of § 722 of the Code "the term 'personal use' was use of a non-business nature without profit motive." *In re Phillips*, 2007 Bankr. Lexis at *55 (citing *In re Runski*, 102 F.3d 744, 747 (4th Cir. 1996)). Because the same terms used in the same act are presumed to have the same meaning, we found that the term "personal use" for the purposes of the "hanging paragraph" must have the same meaning. *In re Phillips*, 2007 Bankr. Lexis at *56. Additionally, we found that personal use overlaps with family and household use as all of these uses are non-business related and without profit motive, and therefore all qualify as personal use. *Id.* at *58 (citing *In re Runski*, 102 F.3d at 747). Consequently, the debtor's argument that his family and household use renders the "hanging paragraph" inapplicable fails. But what of the debtor's business use of the Vehicle?

In *In re Solis* the debtor purchased a Dodge Ram as a family vehicle, but also for the debtor's husband to use to pull a trailer for his disc jockey business. *In re Solis*, 356 B.R. at 402. The debtor asserted in pleadings that she would have purchased a different type of vehicle if her husband had not needed the truck to pull the trailer for his business, but later testified that the truck was purchased for both her personal use and her husband's business use. *Id.* at 402-03. The court there found that the truck was acquired for the debtor's personal use regardless of any business use[11] by her husband because the debtor drove it back and forth from work, and for other family and household purposes. *Id.* at 403.

In *In re Wilson* the debtors also claimed that the "hanging paragraph" did not apply to their vehicles, a 2000 Ford Expedition and a 2000 Dodge pickup, because they were used for business purposes. *In re Wilson*, 2006 Bankr. Lexis at *2. The debtors in that case stated that they were in business as foster parents and used their vehicles in that vein. *Id.* at *3-*4. While the court agreed that the debtors did use their vehicles for their stated business, it also found that the debtors used the vehicles for their own personal use, such as transporting their own biological children and meeting their own needs. *Id.* at *13-*15. Thus, the court ruled that the "hanging paragraph" did apply and the claims could not be bifurcated. *Id.* at 15.

This Court adopts the "significant and material" personal use test found in *In re Solis* and *In re Wilson* and holds that it applies no matter what the other use of the vehicle is, family, household or *business*. See *In re Solis*, 356 B.R. at 409 ("The Court

---

[11] The *Solis* court noted that there was some inconsistency as to when the debtor's husband started his business, but that seemed inconsequential to the ruling.

15

will determine that the 'personal use' requirement of the statute is satisfied if the personal use of the debtor is significant and material, regardless of whether there is also some business use."). Therefore, the question to answer when determining whether the debtor acquired a vehicle for personal use is, "Did the debtor purchase the vehicle with the intent to materially and significantly meet their own personal needs, regardless of any other intentions he may have had?"

In the instant case the debtor's own testimony by affidavit provides a resounding answer of yes to the above question. The debtor admitted the he purchased a vehicle that was large enough to accommodate his entire family, in which to take his children to and from school, daycare, church, shopping, doctor's appointments and extra curricular activities. Lorenz Aff. ¶¶ 1.A.a.-g., 2. Just as the debtors in *In re Solis* and *In re Wilson*, the debtor herein used this vehicle to meet his personal needs in a material and significant way, notwithstanding his clear business uses as well. Additionally, the Retail Installment Sale Contract, signed by the debtor at the time of purchase indicates that the truck would be used for personal, family, or household purposes, despite the fact that it could have been noted that it was being purchased for business purposes. While this fact alone is not dispositive, it is also not insignificant. This was the debtor's personal vehicle as well as his work truck. The Court finds that he acquired it to meet his personal transportation needs and is precisely the type of vehicle indicated in the "hanging paragraph". As such, the "hanging paragraph" prohibits the debtor from bifurcating his claim.

The Court further finds that neither of the exceptions to the Plain Meaning Rule apply, as such a reading of the statute does not conflict with any other part of the statute or Code and does not produce an absurd result. In fact, even with the extremely limited legislative history provided regarding the "hanging paragraph", this reading seems to align most stringently with the plain meaning of the statute and the intent of the drafters. As we have stated before, it is not the position of this Court to effect a change to the language of a statute because its outcome is unpopular; rather such changes need to come from Congress alone.

FCB's objection is, therefore, sustained and confirmation of the plan is denied.

## CONCLUSION

For the foregoing reasons, FCB's Objection to the Chapter 13 Plan is hereby **SUSTAINED** and confirmation of the plan is **DENIED**.

**IT IS SO ORDERED.**
Norfolk, Virginia
April 19, 2007

                                                                             _____
                                                                             David H. Adams, Judge
                                                                              United States Bankruptcy Court

Copies to:
    Michael J. Heath, Esq.
    Jonathan L. Hauser, Esq.
    Frank J. Santoro, Trustee